# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DREAMPAK, LCC ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:18 C 3396 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| INFODATA CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Before us is Defendant InfoData Corporation's ("InfoData") motion to dismiss Plaintiff DreamPak, LLC's ("DreamPak") complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Mot. (Dkt. No. 29).) In support of our jurisdiction, Plaintiff has submitted a declaration of one of its vice presidents, (Gamay Decl. (Dkt. No. 35–1)), which Defendant has moved to strike. (Mot. to Strike (Dkt. No. 39).) Plaintiff opposes Defendant's motion to strike, and in the alternative moves for leave to supplement the record with a declaration from its Senior Financial Controller. (Mot. for Leave (Dkt. No. 43).) For the reasons stated below, we deny both Defendant's motion to dismiss for lack of subject matter jurisdiction and Defendant's motion to strike the declaration. We likewise deny Plaintiff's motion for leave to supplement the record as moot.

## BACKGROUND

Our order on Defendant's earlier motion to dismiss sets out the background of this case. (Order (Dkt. No. 26) at 1–5.) Plaintiff is a Virginia limited liability company that manufactures

beverage enhancers, milk modifiers, and dietary supplements. (Compl. (Dkt. No. 1) ¶ 1.) Defendant, an Illinois software sales and consulting company, is "an expert in the implementation of Enterprise Resource Planning ('ERP') software." (*Id*. ¶¶ 4, 10.)

"[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Plaintiff has submitted four facts in support of our jurisdiction, alongside a declaration of its vice president, Waleed Gamay. (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss ("Resp.") (Dkt. No. 35) at 7–8 (statement of jurisdictional facts); Gamay Decl.) Three of Plaintiff's four jurisdictional facts are uncontested. First, the parties executed a Software Services Agreement and Letter of Understanding ("SSA" (Dkt. No. 1–1)) on September 21, 2015, whereby Defendant agreed to provide and implement ERP software for Plaintiff. (Resp. at 7, ¶ 1; Answer (Dkt. No. 34) ¶ 20 ("Defendant admits that in September of 2015 DreamPak and InfoData executed a Software Service Agreement . . . .").)[1] Second, in return, Plaintiff paid Defendant $82,178.00 on or about the date the SSA was executed. (Resp. at 7, ¶ 2; Reply at 11.) Third, on October 28, 2015, Plaintiff paid Defendant an additional $90,560.16 for consulting application services. (Resp. at 7, ¶ 3; Reply at 12.)

Plaintiff's fourth jurisdictional fact states, in its entirety, "Defendant failed to implement the Sage X3 ERP software package for Plaintiff, and such failure continues to this day. The software is unusable by Plaintiff for any purpose." (Resp. at 8 ¶ 4 (citating Gamay Decl. ¶ 6).) Defendant contests this fact, (Reply at 12), and moves to strike the Gamay declaration supporting

---

[1] Defendant contests Plaintiff's inclusion of certain parts of the alleged contract not relevant to the present motion. (Answer ¶ 20; Reply of Def. in Supp. of Mot. to Dismiss ("Reply") (Dkt. No. 37) at 11 (disputing Plaintiff's documentation of the SSA but acknowledging the parties' agreement).)

it as failing to establish Gamay's personal knowledge of the ERP software's present state, implementation, or usefulness to Plaintiff. (Mot. to Strike ¶ 3.)

In addition, Plaintiff alleges that it spent an additional $33,000 to license and implement alternative ERP software from another vendor when Defendant's services proved inadequate. (Compl. ¶ 54.)

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chi., R. I. & P. R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In determining whether jurisdiction exists, we may "look beyond the jurisdictional allegations of the complaint and consider any evidence submitted on the issue." *Farnik v. F.D.I.C.*, 707 F.3d 717, 721 (7th Cir. 2013). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992); *Farnik*, 707 F.3d at 721.

## ANALYSIS

Plaintiff's suit is predicated upon diversity jurisdiction. 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . .") Defendant challenges only whether Plaintiff's claims exceed the $75,000 amount-in-controversy threshold. (Mot. ¶ 1.)

A district court has an independent duty to ensure that it has subject-matter jurisdiction. *HSBC Bank USA, N.A. v. Garcia*, No. 12 CV 6561, 2014 U.S. Dist. LEXIS 108541, at *5 (N.D. Ill. Aug. 6, 2014) (quoting *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778

(7th Cir. 1994)). The amount in controversy must exceed $75,000 at the time the claim is filed for this Court to have jurisdiction in a diversity suit. *Feliberty v. Unumprovident Corp.*, No. 03 C 7569, 2003 U.S. Dist. LEXIS 22840 (N.D. Ill. Dec. 15, 2003) (citing 28 U.S.C. § 1332(a); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90, 58 S. Ct. 586, 590–91 (1938)). Amount in controversy is measured from the beginning of the suit and is not affected by subsequent dismissal of individual claims. *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2004).[2]

To invoke diversity jurisdiction, a plaintiff must demonstrate "no more than a good faith, minimally reasonable belief" that the claim is for more than $75,000. *Neuma, Inc. v. Amp, Inc.*, 259 F.3d 864, 881 (7th Cir. 2001) (citing *St. Paul Mercury*, 303 U.S. at 288–89, 58 S. Ct. at 590). A plaintiff may aggregate the amount in controversy across all claims against a specific defendant to satisfy the jurisdictional minimum. *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 548 (7th Cir. 2008). However, if a defendant contests the plaintiff's material factual allegations concerning the amount in controversy, then the plaintiff must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). The plaintiff must support contested jurisdictional facts with "competent proof" showing more than merely "the theoretical availability of certain categories of damages." *McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury*, 303 U.S. at 289, 58 S. Ct. at 590; *see also Meridian Sec. Ins. Co.*, 441 F.3d at 541 ("Although the proponent of jurisdiction may be called on to prove

---

[2] Thus, our subsequent dismissal of Counts I (in part), II, and III does not affect whether Plaintiff satisfied the jurisdictional threshold when it filed suit. (Order at 26.)

facts that determine the amount in controversy . . . once these facts have been established the proponent's estimate of the claim's value must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold."); *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 354 (7th Cir. 1995) (describing the "legal certainty" inquiry).

Defendant advances three arguments. First, Defendant asserts that we lack jurisdiction because the "wherefore" clause in Plaintiff's complaint did not contain an explicit amount in controversy. (Def.'s Mem. in Support of Mot. to Dismiss ("Mem." (Dkt. No. 31) at 3–5.) Second, Defendant argues that the SSA contains a limitation of liability clause that limits Plaintiff's claims below the jurisdictional amount. (*Id.* at 5–9.) Finally, Defendant claims that Plaintiff has not offered competent evidence to establish damages exceeding $75,000. (Reply at 2–8; Mot. to Strike; Dkt. No. 40 (mem. supporting Mot. to Strike).) We address each argument in turn.

I.  **"WHEREFORE" CLAUSE**

Defendant initially contends that Plaintiff fails to allege the jurisdictional amount because Plaintiff's "complaint did not contain individual WHEREFORE clauses for each count but instead contains a single WHEREFORE clause for all three counts," which does not specify a monetary value for the damages Plaintiff seeks. (Mem. at 4 (capitalization in original).) Plaintiff responds that not less than $172,738.16 is the amount in controversy, and that its complaint and uncontested jurisdictional facts clearly enumerate these damages in specific allegations (although not in a summary "wherefore" clause). (Resp. at 7–8.)

In Illinois, which governs the SSA (*see* Order at 6), "the measure of damages in a breach of contract for the sale of personal property where the article is one obtainable in the market, is the difference between the contract price and the market price at the time of the breach." *Quad*

*Cty. Distrib. Co. v. Burroughs Corp.*, 68 Ill. App. 3d 163, 165, 385 N.E.2d 1108, 1110 (2d Dist. 1979) (citing *Loescher v. Deisterberg* (1887), 26 Ill. App. 520). In *Quad County Distributing Co.*, the plaintiff had paid the defendant $14,000 for computer programs, which the defendant failed to satisfactorily provide. *Id.* The plaintiff then purchased alternative programs for $18,718.28. *Id.* A jury had awarded the plaintiff the full contract price of the alternative programs. *Id.* The appellate court reduced the award to the difference between the amount contracted with the defendant and the amount the plaintiff paid to the alternative vendor. *Id.* at 166, 385 N.E.2d at 1110.

Based on this theory of contract damages, Plaintiff has plainly alleged more than the jurisdictional minimum in its complaint. Plaintiff claimed it paid $172,738.16 to Defendant for a Sage X3 ERP software license and attendant implementation consulting services. (Compl. ¶ 24 ("On or about September 21, 2015, DreamPak made a payment of $82,178.00 to InfoData" for software license fees and taxes); *id.* ¶ 33 ("DreamPak pre-paid an additional $90,560.16 for the related consulting and project management services InfoData agreed to provide.").) Plaintiff alleged that the ERP system it contracted for "cannot be deployed as part of DreamPak's operations and is not usable for any purpose." (*Id.* ¶ 54; *see also id.* ¶ 53 (listing 21 specific uses of the ERP system that are not functional); *id.* ¶¶ 56–59 (alleging a valid contract under the SSA and Defendant's breach).) Plaintiff claimed that because of Defendant's failure to implement the ERP system, Plaintiff spent approximately $33,000 to license alternative software and to manage its implementation. (*Id.* ¶ 54.) The difference between the contracted-for price as alleged ($172,738.16) and the cost to purchase an alternative on the market ($33,000) is $139,738.16. *See Quad Cty. Distrib. Co. v. Burroughs Corp.*, 68 Ill. App. 3d at 165, 385 N.E.2d at 1110; *Santorini Cab Corp. v. Banco Popular N. Am.*, 2013 IL App (1st) 122070, ¶ 27,

6

999 N.E.2d 46, 52 (1st Dist. 2013) ("When a breach has occurred, the buyer has the right to treat the contract as rescinded and to go into the market and purchase the article at its merchantable value, and then he has the right to recover the difference in the price which he was thus compelled to pay . . . ."). This amount exceeds the $75,000 jurisdictional minimum. 28 U.S.C. § 1332(a).

Defendant cites no case law that would require a plaintiff to specify the precise damage amount in a "wherefore" clause at the end of a complaint. (Mem. at 3–5.) The only case Defendant cites related to this argument, *Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514–15 (7th Cir. 2006), is inapposite. (Mem. at 5.) In *Andrews*, the complaint alleged damages only "in excess of $50,000," less than the $75,000 jurisdictional requirement. 447 F.3d at 515. By contrast, Plaintiff's complaint specifies an amount in controversy at least $50,000 *more* than the $75,000 minimum. (Compl. ¶¶ 24, 33, 54–59.) Moreover, *Andrews* makes clear that a court can typically rely on the amount alleged in the complaint to determine whether a party satisfies the amount in controversy. 447 F.3d at 514–15. It is also well established that a plaintiff may aggregate damages across all claims against a single defendant. *LM Ins. Corp.*, 533 F.3d at 548 (citing *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 585, 125 S. Ct. 2611, 2635–36 (2005) (Ginsburg, J., dissenting) ("[t]his Court has long held that, in determining whether the amount-in-controversy requirement has been satisfied, a single plaintiff may aggregate two or more claims against a single defendant, even if the claims are unrelated")).

The Federal Rules contemplate only a "short and plain statement" in a complaint on the grounds for a court's jurisdiction and the plaintiff's entitlement to relief. Fed. R. Civ. P. 8(a). To require that damages be alleged in a particular spot in a complaint when that information is

7

included elsewhere in the same pleading, or else suffer jurisdictional default, would defeat the Federal Rules' regime of simplicity and harken back to the days of rigid code pleading. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (Rule 8 "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court" (quotations omitted)); *Graff v. Nieberg*, 233 F.2d 860, 865 (7th Cir. 1956) ("It is the intent of the Rules of Civil Procedure that pleadings shall be simple and direct."); *see generally* Wright & Miller, 5 Fed. Prac. & Proc, § 1202 (3d ed. 2019 update) (describing the objectives and functions of pleading under the Federal Rules).

We therefore find no merit to Defendant's first argument.

## II. LIMITATION OF LIABILITY CLAUSE

Defendant next argues that the limitation of liability clause in the SSA precludes diversity jurisdiction by capping available damages below $75,000. (Mem. at 5.) The limitation of liability clause is contained in paragraph 8 of the SSA and provides as follows, with the relevant sentence emphasized:

> Client agrees that InfoData shall not be liable for any incidental, special or consequential damages including damage to any of the Client's data or information arising out of any claim, cause of action or demand, including without limiting the generality of the foregoing claims for breach of warranty, negligence or otherwise howsoever incurred or designated. In no event will InfoData be liable for any damages including damage to any of the Client's data or information caused by the Client's failure to perform the Client's responsibilities, for any loss of profits or for any other consequential damages even if InfoData has been advised of the possibility of such damages, or for any claim against the Client by any other party. *InfoData shall not be liable for any damages (regardless of the form of action, whether in contract or tort) hereunder in excess of the amounts paid to InfoData by Client during the preceding six (6) month period in connection with this Agreement.* No action, regardless of form, arising out of this Agreement, may be brought by either party more than one year after the cause of action has accrued, except that an action for non-payment may be brought within two years after the date of the last payment.

(SSA at 5, ¶ 8 (emphasis added).)

Defendant argues that paragraph 8 limits damages to the amounts Plaintiff paid during the six months preceding the filing of an action. (Mem. at 5–6; Reply at 9.) Under Defendant's interpretation, because Plaintiff filed its complaint on May 11, 2018, (*see* Compl.), only those payments made on or after November 11, 2017 fall within the realm of actionable damages. (Mem. at 8–9.) Because the sole payment Plaintiff alleged in that time frame was at most $33,000 (to another vendor), Defendant argues that Plaintiff cannot have a good faith reasonable belief that it is entitled to damages over $75,000. (*Id.* at 6 (citing Compl. ¶ 54); Reply at 9.)[3] Plaintiff counters that the six-month period in the limitation of liability clause is indefinite and unenforceable, because it does not specify from which point in time the six months is to be measured. (Resp. at 11–12.) "It could conceivably mean the date on which the SSA was executed, the date on which payments under the SSA are due, the date on which an action is filed, the date on which such an action accrues, or any other date." (*Id.* at 11.)

A limitation of liability clause is defined as a contract provision specifying the amount of exposure that a party will face if sued on a claim arising out of the contract by another party. Black's Law Dictionary (11th ed. 2019). "A clause that shifts risk of liability by contract can remove all of a party's potential liability (often referred to as an exculpatory clause), or can limit the total amount of damages one party can pay." *BB Syndication Servs. v. LM Consultants, Inc.*, No. 09 C 1268, 2011 WL 856646, at *3 (N.D. Ill. Mar. 7, 2011). Here, the limitation of liability clause limits Defendant's potential liability to Plaintiff to the amount Plaintiff paid Defendant

---

[3] Defendant also argues that Plaintiff may be able to count an additional (but still insufficient) $36,000 toward the jurisdictional amount, because Defendant allegedly requested on May 24, 2017 that Plaintiff pay this much for extra consulting time. (Mem. at 5 (citing Compl. ¶ 43).) Plaintiff finds this figure to be irrelevant to our jurisdiction. (Resp. at 10.) The complaint alleges only that Defendant requested Plaintiff to pay this additional amount, not that Plaintiff ever actually did so. (Compl. ¶ 43.) We therefore do not consider this other figure in our analysis.

"during the preceding six (6) month period in connection with this Agreement." (SSA at 5, ¶ 8.) Under Illinois law, the clause can be categorized as a partial exculpatory clause. *BB Syndication Servs.*, 2011 WL 856646, at *3 (characterizing a similar clause as a partial exculpatory clause under Illinois law or a stipulated damages clause under Wisconsin law). Courts have the power to dismiss for want of jurisdiction based on a valid limitation of liability clause that caps damages below the jurisdictional requirement. *Pratt Cent. Park Ltd. P'ship*, 60 F.3d at 353–54; *BB Syndication Servs.*, 2011 WL 856646, at *8.

For an exculpatory clause to defeat a claim, the clause must "(1) be strictly construed; (2) with every intendment against the party who seeks immunity; and (3) the clause must spell out the intention of the parties with the greatest of particularity." *Berwind Corp. v. Litton Indus., Inc.*, 532 F.2d 1, 4 (7th Cir. 1976); *accord. Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 395, 493 N.E.2d 1022, 1029–30 (Ill. 1986) ("Such clauses must spell out the intention of the parties with great particularity and will not be construed to defeat a claim which is not explicitly covered by their terms."). Exculpatory clauses are not favored in Illinois and are strictly construed against the party benefiting from it, particularly if that party drafted the release. *Harris v. Walker*, 119 Ill. 2d 542, 548, 519 N.E.2d 917, 919 (Ill. 1988); *Scott & Fetzer Co.*, 112 Ill. 2d at 395, 493 N.E.2d at 1029. Likewise, any ambiguity is resolved against the benefiting party. *Harris*, 119 Ill. 2d at 548, 519 N.E.2d at 919; *U.S. Bank Nat. Ass'n v. Builders Bank*, No. 08 C 5648, 2011 WL 1103875, at *5 (N.D. Ill. Mar. 25, 2011) (citing *Plambeck v. Greystone Mgmt. & Columbia Nat'l Trust Co.*, 281 Ill. App. 3d 260, 268, 666 N.E.2d 670, 674 (1st Dist. 1996)); *Ill. Power Co. v. Duke Eng'g & Servs., Inc.*, No. 99 C 5384, 2002 WL 35232810, at *10 n.5 (N.D. Ill. Mar. 29, 2002) ("To the extent there may be any ambiguity, it would be interpreted against . . . the beneficiary of an exculpatory

clause."). Despite their disfavored status, exculpatory clauses are generally enforceable unless they contravene a settled public policy of the state or something about the parties' social relationship counsels against enforcement. *BB Syndication Servs.*, 2011 WL 856646, at *4; *Harris*, 119 Ill. 2d at 548, 519 N.E.2d at 919; *Hamer v. City Segway Tours of Chi., LLC*, 402 Ill. App. 3d 42, 45, 930 N.E.2d 578, 581 (1st Dist. 2010).

Contract construction is a question of law to be determined by a court. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219, 874 N.E.2d 43, 50 (Ill. 2007). Contracts must be construed to give effect to the intention of the parties, and contract language that is clear on its face, when viewed in light of the contract as a whole, must be given its plain and ordinary meaning. *Id.* at 232–33, 874 N.E.2d at 58. However, "[i]f the language of the contract is susceptible to more than one meaning, it is ambiguous." *Id.* at 233, 874 N.E.2d at 58; *accord Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (Ill. 1991) ("A contract will be considered ambiguous if it is capable of being understood in more sense than one.").

For purposes of the present motion, we conclude that the SSA clause limiting Defendant's exposure to damages is ambiguous and must be construed against Defendant to deny its motion to dismiss. *See Harris*, 119 Ill. 2d at 548, 519 N.E.2d at 919; *U.S. Bank Nat. Ass'n*, 2011 WL 1103875, at *5; *Ill. Power Co.*, 2002 WL 35232810, at *10 n.5. The clause confines Defendant's damages to "the amounts paid to InfoData by [DreamPak] during the preceding six (6) month period in connection with this Agreement." (SSA at 5, ¶ 8.) Defendant asserts that the clause plainly limits damages only to payments made "within the immediate six months *preceding the filing of the complaint*." (Mem. at 9 (emphasis added); *see also* Reply at 9 ("The provision contained in paragraph 8 clearly limits damages to the amounts paid during the

preceding six months *if an action is brought*, whether it be in contract or tort." (emphasis added)).) However, the clause at issue is far from clear on whether the "preceding six (6) month period in connection with this Agreement" refers to the filing of a complaint or some other date. Plaintiff supplies other plausible meanings to demonstrate that the six-month period is not tethered to any particular reference point. (Resp. at 11 (suggesting that the "preceding six (6) month period" could mean the SSA's execution date, date on which payments are due, date on which a complaint is filed, or date of accrual).) The clause's lack of clarity stands in stark contrast to the sentence that follows, which bars any "action" "brought by either party more than one year after the cause of action has accrued," except for actions for non-payment. (SSA at 5, ¶ 8.) While the limitations period annunciated in the SSA's term explicitly references the date of accrual, the limitation of damages is silent as to when "the preceding (6) month period in connection with this Agreement" begins or ends. (*Id.*)

As we must strictly construe an ambiguous exculpatory clause against Defendant, especially one that does not state Defendant's rights with great particularity, we cannot say to a "legal certainty" that Plaintiff's claimed damages are bound to fall below the $75,000 jurisdictional threshold. *St. Paul Mercury*, 303 U.S. at 289, 58 S. Ct. at 590; *Meridian Sec. Ins. Co.*, 441 F.3d at 541; *Harris*, 119 Ill. 2d at 548, 519 N.E.2d at 919; *Scott & Fetzer Co.*, 112 Ill. 2d at 395, 493 N.E.2d at 1029–30. We therefore deny Defendant's motion to dismiss for lack of jurisdiction on this ground.

### III. CONTESTED JURISDICTIONAL FACTS

Defendant's final argument is that Plaintiff has not presented "competent proof" sufficient to back up its claim of damages in excess of $75,000. (Reply at 6.) *Davis v. LeClair Ryan, P.C.*, 363 F. App'x 395, 396–97 (7th Cir. 2010); *McMillian*, 567 F.3d at 845. Defendant

challenges the declaration submitted by Plaintiff's vice president, Waleed Gamay, and seeks to strike his declaration as inadmissible. (*Id.* at 6–8; Mot. to Strike at 1–2.) The only jurisdictional fact that Defendant contests, however, derives from one paragraph of Gamay's declaration. (Gamay Decl. ¶ 6 ("InfoData failed to implement the Sage X3 ERP software package for DreamPak, and that failure continues to this day. The software is unusable by DreamPak for any purpose."); Resp. at 12, ¶ 4 (repeating this fact); Reply at 12 (contesting this fact).).

Plaintiff must prove jurisdictional facts only "if material factual allegations are contested." *Meridian Sec. Ins. Co.*, 441 F.3d at 543. Here, the material factual allegations as to the amount in controversy are uncontested. Defendant agrees that the SSA constituted a valid agreement and that Plaintiff paid Defendant in excess of $170,000. (Answer ¶ 20 (admitting the parties executed the SSA); Reply at 11 (admitting payment of $82,178.00); *id.* at 12 (admitting payment of $90,560.16).) These uncontested facts are all that is necessary to establish that Plaintiff has placed more than the $75,000 minimum in controversy in this suit. Whether Defendant is ultimately liable is a matter to be adjudicated on the merits, not on this threshold jurisdictional motion.

Accordingly, we deny Defendant's motion to strike Gamay's declaration, and deny Plaintiff's motion to supplement the record as moot. (Mot. to Strike; Mot. for Leave.)

## CONCLUSION

For the foregoing reasons, we deny Defendant's motion to dismiss for lack of subject matter jurisdiction and Defendant's motion to strike the declaration of Waleed Gamay.

_____
Honorable Marvin E. Aspen
United States District Court Judge

Dated: July 29, 2019

13